Mel Marin  
2701 Midway Dr., Unit 80715  
San Diego, CA 92110  

October 12, 2022

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 11 2022

TAMMY H. DOWNS, CLERK
By: _____
     DEP/CLERK

Plaintiff  
*Pro Se*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARKANSAS

| | |
|---|---|
| MEL MARIN, | ) Civil 4:22CV986-KGB |
| | ) |
| Plaintiff, | ) COMPLAINT FOR FRAUD |
| | ) AND |
| v. | ) FOR VIOLATION OF THE |
| | ) CALIFORNIA UNFAIR |
| WALMART, INC. | ) COMPETITION LAW (UCL) |
| | ) AND |
| Defendant. | ) FOR CONVERSION |
| | ) AND |
| | ) FOR VIOLATION OF THE |
| | ) CONSUMER'S LEGAL |
| | ) REMEDIES ACT (CLRA) |
| | ) |
| | ) JURY DEMANDED |

**JURISDICTION**

This case assigned to District Judge Baker
and to Magistrate Judge _____

1. This court has jurisdiction and venue is proper here under 28 U.S.C. §

1332, because the defendant is domiciled in Arkansas and plaintiff is not, and

plaintiff seeks and is entitled to five million and eight thousand and seven hundred

1

dollars in damages, exceeding the jurisdictional threshold for this court.

2. The choice of law is California law since plaintiff is in California and is hurt there. Ganey v. Kawasaki Motors Corp., USA, 366 Ark. 238, 234 SW 3d 838, 846 (2006)("Under the doctrine of lex loci delicti, the law of the place where the wrong took place is the proper choice of law"); Nelson v. Eckert, 329 SW 2d 426, 430 (Ark. 1959) (The choice of law is the place of in jury to the plaintiff).

3. The amount in controversy is satisfied by his claim for $1 million for the loss of property that he expects to lose in the near future, or because of $4 million based on punitive damages which he may claim under California law since fraud is alleged. College Hospital Inc. v. Superior Court, 8 Cal.4th 704, 711 (1994) ("Punitive damages . . have been statutorily authorized in actions . . . where the tortious event involves an additional egregious component — "oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a)."); Day v. Rosenthal. 170 Cal.App.3d 1125, 1160 (1985)(constructive fraud is an appropriate basis for an award of punitive damages).

4. Punitive damages are justified as a matter of law because plaintiff alleges WalMart's attempt to mislead the public and this plaintiff into believing he was only entitled to a recovery limited to arbitration or nothing because of wide disclaimers when California statute provides otherwise, and under state law that type of deceit constitutes reprehensible conduct justifying punitive damages:

2

> The court cited LOP's attempt to mislead Cameron into believing that she was entitled to only $6,649.56 in compensation for violation of her right to re-rent as worthy of punitive damages.

Cameron v. Las Orchidias Properties, LLC, B313971, B316033, at Trial Court's Statement (Cal. Ct. App. August 22, 2022)(constitutes reprehensible conduct justifying punitive damages).

5. Under California law, the punitive damages claim need not bear any direct relationship to the actual injury, but is based on the value of the defendant to punish the offender, up to one third of the net value of the entire corporation. Adams v. Murakami, 54 Cal.3d 105,112 (1991) (California courts have allowed up to 33% of net worth for punitive damages.).

6. The net worth of WalMart is $365 billion. Plaintiff does not seek all that he is allowed to ask a jury to award, which would be $122 billion. Instead he asks only for 4 million as punitive damages, which is less than 1/10th of 1% of what he may seek. Bankhead v. ArvinMeritor, Inc, 205 Cal.App.4th 68, 78 (2012) ("In assessing whether a punitive damages award is excessive relative to the defendant's wealth, `the key question . . . is whether the amount of damages "exceeds the level necessary to properly punish and deter.").

7. And those punitive damages may be used to establish the total amount in controversy. Wholerx Inc. v. Cardinal Health, Inc., Case No. 2:22-cv-04498-AB(KSx) (C.D. Cal. Aug. 18, 2022)(" attorneys' fees, punitive damages, injunctive

3

relief—contributes to the amount in controversy …").

8. Finally, the presence of fraud in the formation of the contract destroys the legitimacy of the contract terms, avoiding entirely the arbitration clause. Lopes v. Oracle America, Inc., 22-cv-01815-BLF at C (N.D. Cal. Sept. 15, 2022) ("arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,' 9 U.S.C. § 2").

9. Similarly, the presence of a fraud allegation prevents the enforcement WalMart's disclaimer that seeks to deny buyers rights to make claims under state laws, according to the Supreme Court of California in Seely v. White Motor Co., 63 Cal.2d 9, 17, 25 (1965).

10. Or, if state law does not bar the disclaimer, it is still void because it is intentionally hidden in the middle of the contract and not highlighted on the first page:

> [T]he placement of the disclaimers (buried in a sea of same-sized, capitalized print), coupled with the absence of any cautionary language on the first page of the policy illustration, which contains the deceptive language and figures indicating Powell's out-of-pocket payments will "vanish," precludes a determination the disclaimers are adequate as a matter of law.

Broberg v. Guardian Life Ins. Co. of America, 171 Cal. App. 4th 912, 922 (2009).

## GENERAL ALLEGATIONS

11. On October 5, 2022 plaintiff ordered and paid $1,292.99 for a scooter from WalMart by debit card, and WalMart accepted the payment by card and gave it order number 2000102-65428901 for delivery to the above address. Twelve hours later at 10pm `WalMart unilaterally breached the contract, notifying plaintiff that his contract was "cancelled".

12. When plaintiff called customer service, he was led to believe that the company does not explain why, other than to say the fraud department made the decision but the company did not give reasons nor a chance to correct whatever was missing, and that this happens all the time to other customers. Plaintiff was told he could send another $1,292.99 the next day or try a different card and try again after he checks with his bank to make sure nothing is wrong with the payment.

13. Plaintiff visited over a dozen banks to try to open a new account to avoid card problems, with no luck. Then he checked with the bank which confirmed WalMart actually accepted the money and there as no block from the bank so it "went through".

14. Plaintiff was forced to pay it again because it was the only e-scooter that advertised 25% pitch up hills and plaintiff needed that to move quickly from

5

San Diego courts to a law library up a hill and back since parking costs are greater than the scooter cost after only one month and the law library allowed no parking at all, and plaintiff is involved in several law suits in San Diego and Los Angeles concerning property over which he is a trustee and he will certainly lose them and the property if he cannot move quickly between the courts and libraries.

15. So he tried it again on October 7 and again WalMart took the money for the same scooter *again*, and issued a confirmation of the contract as 2000103-05608531.  But at 10pm WalMart cancelled again, giving no reason.

16. WalMart does this pattern with thousands of consumers of accepting money and holding it and repudiating unilaterally, for two reasons not related to the sale itself.  The first is to seize the funds of the buyers based on advertisements which WalMart knows will not be honored, because it has the effect of denying the sale to a competitor since the money is gone.  The second is to collect money of thousands of buyers without transferring that money to the seller, so that WalMart can show a higher-than-legitimate "float" of net worth to prop up its financial services operations to meet standards regulated by state and federal laws.  It is, in essence, making money from fraud and uses both the buyer and the seller to feed this operation.  That increases their worth by millions every day.  That is why they do not refuse the transaction before accepting the money for the order.

17. Plaintiff had spent a total of 9 hours driving form bank to bank trying to create a new account through which to process the same transaction and had no luck – none of them would issue a debit card in less than 3 weeks and by then it would be too late as plaintiff would be deep into the law suits for the property and would have to wait another 2 weeks for scooter delivery and the inability to answer fully within 30 days of notices would end the litigations.

18. Therefore, WalMart clearly and unilaterally breached the contract, by way of an anticipatory repudiation. Moreover, WalMart drafted the contract to include a disclaimer hidden deep in the contract expressly allowing it to do this to anyone at any time and for any reason.

19. And as a matter of policy not included in the contract, WalMart also refuses to explain adequately its repudiations and refuses to give an opportunity to "cure" or correct whatever failing WalMart identified, and refuses to block money transfers before taking money, intending to collect money and deny Amazon and others the chance to fulfill the orders by taking the buyer's money so she cannot use it elsewhere. This plaintiff gave WalMart a chance to cure its repudiation by sending the money a second time. But WalMart did not give plaintiff that chance.

20. These secret surprise acts of WalMart were the actual or substantial or proximate cause of the following losses to plaintiff and damages claims he may make based on those losses:

( a )  He lost the chance to use his money in time for the expected litigation.

( b )  He lost 9 hours looking for a different bank to substitute, with no luck, which prevented him from doing work for the trust property litigation and which he cannot bill to the trust, losing the opportunity cost of $2,700 for the 9 hours of travel.

( c )  He lost another 5 hours researching and drafting a demand for remedy to WalMart which they ignored, and another 20 hours of additional research and drafting for this complaint, at a lost opportunity cost of $6,000 more.

( d )  However, even though he has not yet lost the property litigation so as an original claim that loss on its own would not be "ripe" to prosecute for damages, because that loss moves from the same nucleus of facts as these other losses, plaintiff must make that claim as well, at once, under the doctrines of *res judicata* or collateral estoppel which requires he prosecute all current claims he has and all that are related in the same proceeding or he will be barred from filing a new action later against the related claims, as in <u>Hamilton v. Arkansas Pollution Control & Ecology Com'n</u>, 333 Ark. 370, 969 SW 2d 653, 656 (1998)(""[T]he test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both...."). For that reason plaintiff claims $1, 000, 000 which is the value of the property he will now lose.

( e )  Plaintiff may also claim punitive damages under California law up to 1/3 of

the net worth of WalMart which is $365 billion, since fraud is alleged. On this basis he claims $4 million or an amount more or less that this jury may find is necessary to wake up WalMart leadership to stop these games stealing from both sellers and buyers thousands of times every day.

21. WalMart's net worth is $365 billion.

## FIRST CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT

22. All allegations above are incorporated into this cause of action by this reference.

23. "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. (Civ. Code, § 3294, subd. (c)(3).)

24. WalMart committed this fraud by concealing the fact that it would not honor the covenant of good faith and fair dealing which is assumed by state law to be a part of every contract and which requires the seller before repudiating the contract to inform the buyer what was missing or defective and give the buyer a fair chance to "cure" that problem, as in Crescent Point Energy Corp. v. Tachyus

Corporation, 20-cv-06850-MMC, at B (N.D. Cal., Feb. 10, 2022)(party has right to cure deficiencies in its contract performance). In other words, WalMart has a policy of refusing to follow the covenant of good faith and fair dealing regularly.

25. WalMart committed this fraud by representing falsely, that it had a right to use a wide disclaimer of liability limiting recoveries of buyers that it defrauds, which California courts have held to be outrageous conduct by a party:

> The court cited LOP's attempt to mislead Cameron into believing that she was entitled to only $6,649.56 in compensation for violation of her right to re-rent as worthy of punitive damages.

Cameron v. Las Orchidias Properties, LLC, B313971, B316033, at Trial Court's Statement (Cal. Ct. App. August 22, 2022)(constitutes reprehensible conduct justifying punitive damages).

26. WalMart also committed this fraud by advertising to buyers that gives the impression that it is selling goods for sellers and will deliver the goods as represented in the WalMart computer ads, and omitting to the public that it also executes an ulterior policy of taking money from buyers with the intention of merely holding it to deny the buyer the chance to buy from a competitor, and without regard to whether that thing sold is even available to buy.

27. Mel had a right to have the scooters delivered and Walmart denied that.

28. This denial was an actual, or substantial or proximate cause of the financial injuries described above.

29. WHEREFORE, Mel seeks from this jury and is entitled to an award of $5,008,700 against WalMart.

## SECOND CAUSE OF ACTION FOR CONVERSION

30. All allegations above are incorporated into this cause of action.

31. A conversion claim arises where there is an "act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Florey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield & Byers, 31 F. Supp. 3d 1034, 1041 (N.D. Cal. 2014).

32. Mel owned the scooters once he paid fully for them and WalMart had no right to hold them for any reason because they belonged and do belong today to Mel, as in Conley v. Poway Land & Inv. Co., 232 Cal. App. 2d 22, 24 (1965) ("Poway obtained a vested right to a release of acreage upon payment of the $40,250" and Conley had duty to deliver the property "rather than cancelling its right to property").

33. This withholding of Mel's scooters was an actual, or substantial or proximate cause of the financial injuries described above.

34. WHEREFORE, Mel seeks from this jury and is entitled to an award of $5,008,700 against WalMart.

# THIRD CAUSE OF ACTION FOR VIOLATION OF
# THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")

35. All allegations above are incorporated into this cause of action by this reference.

36. Because WalMart committed fraud, and fraud is a violation of state law, WalMart also violated the UCL:

> "To state a claim [a right to sue] under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate violation, and (2) an accompanying economic injury caused by the violation." Aerojet Rocketdyne, Inc. v. Global Aero., Inc., 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020) (citation omitted); see also Berryman v. Merit Property Management, Inc., 152 Cal. App. 4th 1544, 1554 (2007) ("a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong"). Predicate violations include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."

<u>Height Street Skilled Care, LLC v. Liberty Mutual Insurance Company</u>, 1:21-cv-01247-JLT-BAK (BAM), at A Unlawful Practices (E.D. Cal., May 24, 2022).

37. WalMart violated the California common laws of fraud and conversion so it also violated the state unfair competition law under the definition above.

38. Those violations deprived Mel of his scooters that he paid fo twice.

39. Therefore, the UCL allows and Mel is entitled to an injunction directing WalMart to deliver both of them at once without additional payment of any kind, including shipping costs since the offer represented shipping was free.

## FOURTH CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA CONSUMER'S LEGAL REMEDIES ACT (CLRA)

40. All allegations above are incorporated into this cause of action by this reference.

41. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

42. This act was violated by WalMart because their secret terms and policy of denial of good faith and fair dealing and false representation of rights of buyers and other acts described above were both unfair and deceptive and resulted in the sale of 2 scooters to Mel who is a consumer.

43. Mel was injured by these violations as described above and under the CLRA Mel is entitled to compensatory and punitive damages for "unfair" selling practices even if they were not fraudulent, according to the state statute at

California Civ. Code, § 3343.5, subd. (a)(6).

44. WHEREFORE, Mel seeks from this jury and is entitled to an award of $5,008,700 against WalMart.

These allegations are verified.

DATED: October 12, 2022                              _____
                                                                                   Mel Marin

M Marin
2701 Midway Dr. Unit 80715
S. Diego CA 92110

US District Court
500 W. Capitol Ave DIST
Little Rock, Ark. 72201

